MOUNTAIN TOP TRUCKING CO. INC, Elmo Mayes, William David Riley, Anthony Mayes, and Mayes Trucking Co., Inc. Petitioners,

v.

SECRETARY OF LABOR, MINE SAFETY & HEALTH ADMINISTRATION (MSHA) on behalf of Walter Jackson and Federal Mine Safety & Health Review Commission, Respondents.

No. 01–4356.

United States Court of Appeals, Sixth Circuit.

Oct. 1, 2003.

Before RYAN and BATCHELDER, Circuit Judges;  and TARNOW, District Judge.*

## OPINION

TARNOW, District Judge.

Petitioner Mountain Top Trucking Co. (Mountain Top) appeals a final administrative decision of the Federal Mine Safety & Health Commission (Commission). The Commission affirmed a backpay award to Walter Jackson for Mountain Top's discharge of Jackson in violation of the Mine Safety Act of 1977, 30 U.S.C. § 801, et seq (Mine Act). In the instant case, Mountain Top appeals an earlier, separately-drafted liability determination and the backpay award to Jackson. For the reasons set forth below, we find that as to the liability issues, Petitioner procedurally defaulted his right to appeal by failing to preserve the issues for review at the administrative level. Additionally, we affirm the Commission's decision on the backpay issue.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Walter Jackson was employed by Mountain Top as a coal haulage truck driver from May 1994 until February 17, 1995. As part of its contract with Lone Mountain Processing, Inc. (Lone Mountain), Mountain Top hired Jackson to haul coal from Lone Mountain's mine in Kentucky to its processing plant in Virginia, a distance of approximately eight miles. On February 17, 1995, Jackson experienced a malfunction of his truck and refused to finish his shift. As a result, Mountain Top discharged Jackson. On March 14, 1995, Jackson filed a discrimination complaint with the Mine Safety & Health Administration (MSHA) alleging that he was unlawfully discharged for engaging in protected safety activities pursuant to 30 U.S.C. § 815(c)(1).[1] The Secretary of Labor filed a complaint with the Federal Mine Safety & Health Review Commission on Jackson's behalf.[2] Among other reme-

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. This anti-discrimination section states in part: "No person shall discharge or in any manner discriminate against or otherwise interfere with the exercise of the statutory rights of any miner ... because such miner ... has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent ... of an alleged danger or safety or health violation in a coal or other mine ..."

2. Jackson's case was consolidated with discriminatory discharge complaints by two other miners, Lonnie Bowling and Everett Darrell Ball.

dies, Jackson sought backpay for lost wages.[3]

### a. ALJ Liability Determination

In a preliminary liability determination dated January 23, 1997,[4] an administrative judge held that Mountain Top's discharge of Jackson violated the Mine Act. The ALJ further found that all named petitioners except William David Riley were liable for the illegal discharge. Neither party appealed this preliminary determination.

### b. ALJ Decision on Remedies

On May 21, 1997, the ALJ issued a Supplemental Decision and Final Order awarding limited backpay to Jackson. The limitation was based on the ground that Jackson failed to mitigate damages. This decision constituted the ALJ's final determination.[5] A civil penalty was also levied against Petitioners. The Secretary and Jackson appealed the adverse portion of the supplemental decision. Mountain Top appealed neither the initial liability decision nor the remedies portion of the ALJ's two-part decision.

### c. First Commission Appeal and Remand

Following Jackson's appeal, the Commission reversed the ALJ's finding that Jackson had failed to mitigate damages, and remanded for a recalculation of backpay and interest owed to Jackson. On remand, the judge awarded full backpay to Jackson despite reviewing newly-developed evidence which suggested that Jackson was not eligible for employment during the entire backpay period. This new evidence included a period of college attendance following his discharge, and an eye injury which pre-dated Jackson's employment at Mountain Top.

### d. Second Commission Appeal & Remand

Mountain Top subsequently appealed the backpay award, arguing that Jackson's college attendance and his eye injury reduced or eliminated his eligibility for backpay. It should be noted that this was the first time Mountain Top appealed any ALJ determination. Upon review, the Commission held that the ALJ had failed to consider the impact of the new evidence on the backpay calculation. The case was remanded for reconsideration of Jackson's backpay. On December 4, 2000, the ALJ issued a decision awarding adjusted backpay damages reflecting periods of Jackson's college attendance. However, the ALJ determined that the eye injury did not render Jackson unavailable for employment during the backpay period.

### e. Final Commission Decision

Both parties appealed the ALJ's decision on second remand. The Commission granted review of Jackson's appeal but denied Mountain Top's appeal. On November 30, 2001, the Commission unanimously affirmed the ALJ's backpay award in his second decision on remand. The Commission found that the ALJ's decision, while misstating the law regarding parties'

---

3. The Secretary also sought a civil penalty and Jackson's reinstatement. The latter action was dismissed after Jackson found other employment.

4. The ALJ noted that: "This decision shall not constitute the judge's final decision in this matter until a final Decision on Relief is entered. The final Decision will address the issue of what civil penalties, if any, should be imposed in these matters." (Joint App. at 69)

5. The final paragraph notes, "the January 23, 1997, Decision on Liability and this Supplemental Decision shall constitute the Administrative Law Judge's final disposition in these proceedings."

burdens of proof, was nonetheless supported by substantial evidence on the record as a whole.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review an appeal of a final order of the Commission. 30 U.S.C. § 816(a)(1). Factual determinations by the Commission, "if supported by substantial evidence on the record considered as a whole, shall be conclusive". *Id.*

## III. ANALYSIS

Petitioner raises four issues in the instant appeal, three of which relate to the initial liability determination.[6] The fourth issue relates to Jackson's eligibility for backpay during the backpay period. Respondent asserts that Petitioner is barred from raising the liability issues because they were never preserved for appeal before the Commission. As for the backpay issue, Respondent argues that the ALJ's final determination was supported by substantial evidence on the record as a whole. We agree with Respondents on both counts.

### a. Liability Issues

■ Under the Mining Act, parties have 30 days following the issuance of an order to appeal an ALJ's decision to the Commission, after which time the order becomes final. 30 U.S.C. § 815(c)(2); 30 U.S.C. § 815(d); § 823(d)(2)(A)(i). The Mining Act also requires exhaustion of administrative remedies prior to review by a federal court of appeals. Specifically, it states that:

> [n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. 30 U.S.C. § 816(a)(1).

Simply put, Petitioner cannot raise issues on appeal before this Court unless it has already timely preserved these issues on appeal before the Commission.

It is undisputed that Petitioner appealed *neither* the January 1997 initial liability determination nor the May 1997 "Supplemental Decision and Final Order" within 30 days of its issuance. In fact, Petitioner's first attempt to appeal liability issues did not occur until September 17, 1999, when it filed a Petition for Discretionary Review (PDR). This PDR was filed more than two years after issuance of the ALJ's final order, *after* the case had been reviewed and remanded by the Commission, and *after* the ALJ issued a new award on remand. Significantly, the Commission denied this petition.[7] Therefore, because Petitioner never filed a timely appeal, it is procedurally barred from appealing the final liability determination before this Court.

### b. Backpay Issue

■ Petitioner additionally appeals the determination, first made by the ALJ on second remand, that Jackson's eye impairment had no effect on his availability for employment during the backpay period. In a January 2001 Petition for Discretion-

---

6. Specifically, Petitioner raises the following issues: 1) whether Jackson was actually engaged in a protected safety activity for which he was discharged; 2) whether Jackson was given a *bona fide* offer to return to work; 3) whether Tony Mayes was liable for the unlawful discharge.

7. In an order dated September 24, 1999 denying Petitioner's September 17, 1999 Petition for Discretionary Review (PDR), the Commission notes in footnote 2: "This PDR also requested review of aspects of the judge's decision involving Jackson's claims. Review of these claims was also denied."

ary Review, Petitioner timely appealed the ALJ's determination as to the effect of Jackson's eye injury on backpay, as well as other backpay issues. In an order dated January 16, 2001, the Commission denied review of Mountaintop's PDR. The Commission did, however, grant Jackson's appeal on the backpay issue concerning mitigation of damages.

Where a party's petition for discretionary review is denied by the Commission, the ALJ's decision becomes the Commission's final decision. 30 USC § 823(d)(2)(A)(i). Consistent with this, the ALJ's decision regarding the impact of the eye injury on backpay became the final decision of the Commission following the denial of Mountain Top's Petition for Discretionary Review. We therefore review the ALJ's decision on this issue to determine whether the Commission's adoption thereof is supported by substantial evidence on the record as a whole.

Petitioner argues that Jackson's pre-existing eye injury and resulting impaired vision disqualified him from driving a commercial vehicle interstate, in violation of 49 CFR § 391.41.[8] According to this argument, Petitioner asserts that, because Jackson was not qualified to work as a commercial truck driver during his employment at Mountain Top, he is thus ineligible for backpay. We disagree, and affirm the Commission's decision.

We have reviewed the parties' briefs, the ALJ's decision on second remand, transcript excerpts, evidence presented at the ALJ's hearing, and the Commission's final decision. Without repeating those findings here, we find it significant that during the entire backpay period, Jackson successfully passed the physical examinations required for the commercial drivers license, and retained it through December 1996, well beyond the backpay period. Because of this, the ALJ noted that Jackson was legally qualified to find work as a commercial truck driver for the entirety of the relevant backpay period. We further find it significant that no evidence was ever presented to indicate that Jackson's eye injury interfered with his driving duties at Mountain Top. Further, the ALJ, citing *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307 (D.C.Cir.1972), noted that the duty to mitigate damages requires not identical employment, but only substantially similar employment. On this basis, the ALJ determined that employment as a general laborer would satisfy Jackson's duty to mitigate. The ALJ thus correctly concluded that "the evidence reflects that Jackson was capable of performing duties as a general laborer and/or a truck driver at all times during the February 18, 1995, through June 21, 1996, period of relief."

## IV. CONCLUSION

We conclude that the first three issues were not timely raised. Further, we find that the ALJ's determination on the backpay issue is supported by substantial evidence on the record as a whole. For these reasons, the decision of the Commission is affirmed.

---

**8.** That regulation requires operators of commercial vehicles to have minimum corrected vision of 20/40 in each eye, while evidence stemming from an earlier products liability lawsuit indicated that, in 1991, Jackson had corrected vision of only 20/50 in his right eye.